UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
06-CV-2268(JMR/FLN)

| | | |
|---|---|---|
| Entertainment Software Association and Entertainment Merchants Association<br><br>v.<br><br>Mike Hatch, in his official capacity as Attorney General of the State of Minnesota | ) | ORDER |

Plaintiffs, Entertainment Software Association and Entertainment Merchants Association, ask the Court to enjoin the State of Minnesota from effectuating and enforcing Minn. Stat. § 325I.07, which was recently enacted by the Minnesota state legislature. The statute would fine those under 17 years of age for renting or purchasing certain video games.

The matter was originally presented as a petition for emergency relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. The Court heard oral argument on July 11, 2006, at which time the parties agreed the case could be considered as an application for a permanent injunction. Thereafter, the Court granted the parties additional time in which to supplement their initial filings. Defendant has done so.

Plaintiffs claim they will suffer irreparable harm if Minn. Stat. § 325I.07 is enforced. They contend the statute unconstitutionally violates the First and Fourteenth Amendments to the U.S. Constitution, and contravenes 42 U.S.C. § 1983. Defendant, Mike Hatch, in his official capacity as Attorney General

of the State of Minnesota ("the State"), opposes plaintiffs' motion.

For the reasons set forth herein, the Court finds plaintiffs are correct; the statute is unconstitutional. Accordingly, the enforcement of Minn. Stat. § 325I.07 is hereby permanently enjoined.

I. The Statute

On May 31, 2006, Minnesota's Governor Tim Pawlenty signed the Minnesota Restricted Video Games Act ("the Act") into law. The Act provides, in relevant part, that:

> [a] person under the age of 17 may not knowingly rent or purchase [a video game rated AO or M by the Entertainment Software Rating Board]. A person who violates this subdivision is subject to a civil penalty of not more than $25.

Minn. Stat. § 325I.07, subd. 2 (2006). The Act also requires video game retailers to post a sign stating, "A person under the age of 17 is prohibited from renting or purchasing a video game rated AO or M. Violators may be subject to a $25 penalty." Minn. Stat. § 325I.07, subd. 3 (2006).

In the absence of any action by this Court, the challenged Act becomes effective on August 1, 2006.

II. Background

Plaintiffs represent parties who create, publish, sell, and rent video games. The video game industry has established a voluntary ratings system, the centerpiece of which is the

Entertainment Software Rating Board ("ESRB"). The ESRB is a private entity which bases its ratings on reviews made by a randomly-selected group of three trained reviewers. Consumer focus groups then evaluate the proposed ratings. Game publishers may challenge a rating with which they disagree. The ESRB confers one of the following six possible ratings classifications on each game it reviews: EC (Early Childhood), E (Everyone), E+10 (Everyone 10 and Older), T (Teen), M (Mature), and AO (Adults Only).

While the ratings system is voluntary, the Court received undisputed affidavit evidence showing virtually all game publishers submit their games to this rating process. The evidence also showed that, even absent any state-mandated enforcement scheme, retailers voluntarily enforce the ratings program by educating consumers and prohibiting those under 17 years of age from renting or buying games rated M or AO. Other unchallenged evidence, however, showed that despite the ratings, children under the age of 17 are sometimes able to rent or purchase M-rated games.

## III. Discussion

### A. Permanent Injunction

The standard for a permanent injunction is virtually the same as that for a preliminary injunction. The only substantive difference is that the moving party must show actual – as opposed to a probability of – success on the merits. Bank One v. Guttau, 190 F.3d 844, 847 (8th Cir. 1999). Therefore, when considering a

request for a permanent injunction, the Court considers four factors: (1) whether the movant has demonstrated success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between that harm and any injury the relief would inflict on other parties; and (4) whether the injunction will serve the public interest. Id.; Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981).

B. Success on the Merits

1. Violation of Constitutional Rights

The Eighth Circuit Court of Appeals has clearly established that video games are a protected form of speech under the First Amendment. Interactive Digital Software Ass'n v. St. Louis County, 329 F.3d 954, 958 (8th Cir. 2003) (stating that video games are protected speech and not obscene). Defendant's submissions recognize this fact, as well as the Court's concomitant obligation to apply the Circuit's controlling authority.

The Act imposes a regime which attempts to regulate video games based on content. It does so by restricting minors from renting or buying video games with an M or AO rating. As these games enjoy First Amendment protection, any such restriction is presumptively invalid and subject to strict scrutiny. Id.

The Act, therefore, can only survive plaintiffs' challenge if it is narrowly tailored to achieve a compelling state interest. Id. The State claims there are two compelling interests which

justify the Act. First, it asserts an interest in protecting the psychological well-being of minors; second, it claims the Act fosters children's moral and ethical development. In order to prevail, a state must do more than merely articulate a purportedly compelling interest; it must also show that the harms it seeks to prevent "are real, not merely conjectural, and that the regulation will in fact alleviate those harms in a direct and material way." Id. (quoting Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 664 (1994) (plurality opinion)).

The State contends it may show the alleged harms are real by providing substantial evidence from which one may reasonably infer a harm exists. It premises this argument on the United States Supreme Court ruling in Turner Broadcasting System, Inc. v. FCC, 512 U.S. 622 (1994). In that case, the Supreme Court considered a situation calling for intermediate scrutiny. It held that in such cases, a legislature need only provide an important or substantial interest. Therefore, under intermediate scrutiny, a state may show a harm exists by making a reasonable inference based on substantial evidence. Turner Broad. Sys., 512 U.S. at 661-62.

But Turner is inapposite. That case considered a statute subject to an intermediate level of scrutiny, a lesser standard than the strict scrutiny established for video games by the Eighth Circuit in Interactive Digital Software. As the State well knows, where protected First Amendment speech is concerned, any regulation

is subject to "strict," rather than Turner's "intermediate," scrutiny. The Eighth Circuit did quote Turner for the proposition that "substantial supporting evidence" of harm is required, but we do not find this reference adopted Turner's less-strict standard. Interactive Digital Software Ass'n, 329 F.3d at 959. Under Eighth Circuit precedent, the State must meet a higher standard and provide substantial, actual "empirical support for its belief that 'violent' video games cause psychological harm to minors." Id. The State has failed to meet this burden.

The State relies heavily on a meta-analysis study performed by Dr. Craig Anderson in 2004. Craig A. Anderson, An Update on the Effects of Playing Violent Video Games, 27 J. Adolescence 113 (2004). The State claims this study supports the proposition that exposure to violent video games is related to aggressive behavior in minors. This Court's review of the article reveals it to be completely insufficient to demonstrate an empirical, causal link between video games and violence in minors. The article, itself, reports that the body of violent video game literature is not sufficiently large to conduct a detailed meta-analysis of a specific feature. Id. at 115. The author notes "[t]here still is not a large enough body of samples in this domain for truly sensitive tests of potential age differences in susceptibility to violent video game effects." Id. at 117. Dr. Anderson also notes the lack of longitudinal studies as a "glaring empirical gap" in video game research. Id. at 121. Even assuming the methodology

employed by Dr. Anderson to be correct,[1] Dr. Anderson's meta-analysis is far too slight to bear the weight of the State's argument.

The State itself acknowledges, both in its submissions and during its counsel's oral argument, that it is entirely incapable of showing a causal link between the playing of video games and any deleterious effect on the psychological, moral, or ethical well-being of minors.

The State's concerns are inchoate. It is impossible to determine from the data presented whether violent video games cause violence, or whether violent individuals are attracted to violent video games. In short, the State is simply unable to "demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate those harms in a direct and material way." Interactive Digital Software Ass'n, 329 F.3d at 958.

Even if the State could make such a showing, this Act is not narrowly-tailored to meet those ends. Many of the State's proffered studies examine the effect of other violent media, such

[1]Dr. Anderson's meta-analysis seems to suggest that one can take a number of studies, each of which he admits do not prove the proposition in question, and "stack them up" until a collective proof emerges. It is fair to say that his article does not, on its face, demonstrate the validity of this thesis. In making this observation, the Court sees no present need to undertake a Daubert analysis concerning the article's admissibility - especially when the article itself identifies empirical flaws which keep it from actually supporting the State's purported interests. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

as television, in conjunction with video games.[2] There is no showing that restricting video games alone would alleviate the State's concern about Minnesota's children. Video Software Dealers Ass'n v. Maleng, 325 F. Supp. 2d 1180, 1189 (W.D. Wash. 2004) ("[T]he Act is too narrow in that it will have no effect on the many other channels through which violent representations are presented to children."). Further, there is no showing whatsoever that video games, *in the absence of other violent media*, cause even the slightest injury to children.

The State claims the legislature is given substantial deference in the face of an underinclusiveness challenge, relying on Haskell's Inc. v. Sopsic, 306 N.W.2d 555 (Minn. 1981). That case is not controlling here. Haskell's involved a statute subject to rational basis review. Id. at 558. The instant case involves a restriction on non-obscene speech, which is subject to strict scrutiny. The State certainly knows that strict scrutiny is a significantly higher standard of review, and a case reviewing a statute for rational basis is inapposite. As Minn. Stat. § 325I.07

[2]William G. Kronenberger et al., Media Violence Exposure in Aggressive and Control Adolescents: Differences in Self- and Parent-Reported Exposure to Violence on Television and in Video Games, 31 Aggressive Behav. 201 (2005); William G. Kronenberger et al., Media Violence Exposure and Executive Functioning in Aggressive and Control Adolescents, 61 J. Clinical Psychol. 725 (2005); Vincent P. Mathews et al., Media Violence Exposure and Frontal Lobe Activation Measured by Functional Magnetic Resonance Imaging in Aggressive and Nonaggressive Adolescents, 29 J. Comput. Assist. Tomogr. 287 (2005); John P. Murray et al., Children's Brain Activations While Viewing Televised Violence Revealed by fMRI, 8 Media Psychol. 25 (2006).

attempts to regulate protected speech, it is presumptively invalid. The State has failed to provide evidence sufficient to overcome the presumption.

The Court finds the Act unconstitutionally impinges on expressions protected by the First Amendment of the Constitution. It is therefore invalid and unenforceable.

2. Violation of Due Process

Plaintiffs further claim the Act's use of the ESRB rating system as a means of dictating legal and illegal behavior represents an improper delegation of authority. They challenge the Act on the basis of the holding in Engdahl v. City of Kenosha, 317 F. Supp. 1133 (E.D. Wis. 1970). In Engdahl, the district court considered whether it was proper for a state to delegate to the Motion Picture Association of America ("MPAA") and its rating system the authority to determine whether movies are proper for minors. The Engdahl court found the delegation was unconstitutional. Id. at 1135.

The State attempts to distinguish this case from Engdahl, arguing that case's constitutional flaw was the MPAA's lack of clearly ascertainable standards, not the delegation of authority itself. Id. The Court disagrees with that reading. But even if correct, the State has not shown that the ESRB uses ascertainable standards. Much is made of the ESRB's procedures, but the State offers no insight as to whether there are objective standards which are applied by the specially "trained" individuals in reaching

their M or AO ratings. Even assuming the raters are "trained," no evidence discloses the nature of that training. There is no showing that ratings are consistent from one rating panel to the next, and no showing of demonstrated controls over the panel's discretion. Lacking a clear delineation of the standards used to determine a video game's rating, the State cannot rest legal implications upon them.

The Court finds the Act's delegation of authority to the ESRB to determine those video games which a child under 17 years of age may rent or purchase is improper. The ESRB rating is determined by a private body with no duty to answer to the public. Indeed, the rating scheme does not provide a method for the public or the State to challenge a rating once it is determined; only video game publishers are given that right. The State, itself, has no recourse should it disagree with an ESRB rating, be it too harsh or too lenient.

This delegation of power affords no basis upon which a court could constitutionally impose a fine on the children of the state of Minnesota for violating the Act. The Court finds such a delegation of authority, whether the penalty for violation of the Act be civil or criminal, violates the First and Fourteenth Amendments, and renders the Act unconstitutional. Lacking clear standards, the State has not shown that those games which are harmful to minors, and *only* those games, are restricted.

3. Compelled Speech

The Act mandates the posting of signs – in 30-point font or larger – by video game merchants or retailers, and specifically prescribes the message to be printed on that sign. Minn. Stat. § 325I.07, subd. 3 (2006). The Supreme Court has established that the First Amendment not only protects expression of speech, but also prevents the government from compelling the expression of certain views. United States v. United Foods, Inc., 533 U.S. 405, 410 (2001). In order to determine the constitutionality of this requirement, the Court must first determine the appropriate standard of review.

A statute which generally regulates commercial speech is subject only to rational basis review. Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 651-52 (1985). This is opposed to a statute which compels expression of a particular political or ideological message, which is considered a content-specific regulation and is subject to strict scrutiny. Scope Pictures v. City of Kansas City, 140 F.3d 1201, 1205 (1998).

The State argues the Act's requirement is content-neutral. If the State is correct, rational basis review is appropriate. Plaintiffs, however, claim the signs convey the meaningful message that it is unlawful for minors to buy or play certain games, and conversely, that those 17 years of age and older are authorized to

buy and play all games rated M or AO. Plaintiffs believe this message is contrary to the ESRB system.

The Act requires that stores display a sign which is, ultimately, a plain-language version of the State's proposed law. Private individuals may disagree with a law, but in this context, recitation of a law is neither political nor ideological speech. Minnesota's law is replete with requirements that business-owners post signs reflecting state law. Minn. Stat. § 340A.410 (requiring liquor stores and bars to post signs regarding penalties for serving alcohol to a person under 21); Minn. Stat. § 325E.07 (requiring cigarette vending machine owners to post sign stating minors may not purchase cigarettes). These signage requirements satisfy a state's interest in informing the public, and are otherwise constitutional.

But the sign mandated by this Act cannot be considered in the abstract. This Order declares the substance of the Act unconstitutional and unenforceable. The signage requirement thus becomes the forced declaration of an unenforceable law. As such, the statute's ukase is nothing more than a state-compelled false statement. A state's requirement that a business post a false statement serves no legitimate governmental interest and, if allowed, would merely be a state-mandated political declaration. This section of the Act, too, violates the constitution and is enjoined.

C. <u>Threat of Irreparable Harm</u>

Plaintiffs bear the burden of showing a harm for which there is no remedy at law. They have met that burden. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Iowa Right to Life Comm., Inc. v. Williams, 187 F.3d 963, 970 (8th Cir. 1999) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976) (plurality)). Any infringement of First Amendment rights includes a chilling effect, whereby others may be "deterred, even if imperceptibly, from exercising those rights in the future." United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l Transit Auth., 163 F.3d 341, 363 (6th Cir. 1998) (citations omitted). As there is no adequate remedy at law for such violations, the Court finds equitable relief to be appropriate.

D. Balance Between That Harm and Any Injury to Other Parties

Should the injunction be granted, the State argues the children of Minnesota's psychological well-being and ethical and moral development will be harmed. The problem with this argument is the State's inability to show the truth of this position. As shown above, there is a paucity of evidence linking the availability of video games with any harm to Minnesota's children at all. A person, indeed a legislature, may believe there is a link and a risk of harm, but absent compelling evidence, the belief is pure conjecture. The State's professed concerns, in the absence of evidence showing them to be well-founded, do not outweigh the

chilling effect on free speech that would result from the Act's becoming effective.

The State also urges the Court, when balancing the interests, to consider the "lesser societal value" of "worthless, disgusting" video games. Def.'s Supplemental Mem. in Opp'n 13. The Court is aware of no facet of First Amendment jurisprudence, excepting only obscenity, which permits the Court, let alone the State, to evaluate the worth of protected speech. The Eighth Circuit has made it clear that violent video games are not obscene[3] and are entitled to First Amendment protection. The First Amendment, which has its counterpart in Minnesota's own Constitution,[4] was certainly established to keep the government from becoming the arbiter of what constitutes "worthless" or "disgusting" speech. The Court declines the State's invitation to enter into an evaluation of this kind.

E. Public Interest

The Court finds the public interest weighs strongly in favor of plaintiffs. The United States Constitution is the ultimate expression of the Nation's public's interest, and, when its First Amendment declares that Congress, the people's representatives, may

---

[3]Interactive Digital Software Ass'n, 329 F.3d at 958 ("We reject the County's suggestion that we should find that the 'graphically violent' video games in this case are obscene as to minors . . .").

[4]Minn. Const. art. I, § 3.

make no law abridging freedom of speech, the public's interest is clear.[5,6] This injunction protects and gives meaning to the public interest.

## IV. Conclusion

For the foregoing reasons, the Court grants a permanent injunction in favor of the plaintiffs, enjoining the effectuation and enforcement of Minn. Stat. § 325I.07 (2006).

---

[5]The Fourteenth Amendment guarantees the rights in the First Amendment to all people against abridgement by any State. Thornhill v. State of Alabama, 310 U.S. 88, 95 (1940).

[6]Several other states have tried to regulate minors' access to video games. Every effort has been stricken for violating the First Amendment. Am. Amusement Mach. Ass'n v. Kendrick, 244 F.3d 572 (7th Cir. 2001); Entm't Software Ass'n v. Blagojevich, 404 F. Supp. 2d 1051 (N.D. Ill. 2005); Entm't Software Ass'n v. Granholm, 426 F. Supp. 2d 646 (E.D. Mich. 2006); Video Software Dealers Ass'n v. Schwarzenegger, 401 F. Supp. 2d 1034 (N.D. Cal. 2005) (granting a preliminary injunction preventing enforcement of a law restricting minors' access to video games); Video Software Dealers Ass'n v. Maleng, 325 F. Supp. 2d 1180 (W.D. Wash 2004). The Court will not speculate as to the motives of those who launched Minnesota's nearly doomed effort to "protect" our children. Who, after all, opposes protecting children? But, the legislators drafting this law cannot have been blind to its constitutional flaws. John Reinan, Video Game Makers Take Aim at New Minnesota Law, Star Trib., July 7, 2006, at A15.

IT IS SO ORDERED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 31, 2006

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States Chief District Judge